IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

NANCY BRYCE,              )
                           )
      Plaintiff,          )
                           )
      v.                )     Civil Action No. 1:23-cv-01157
                           )
SP PLUS CORPORATION d/b/a SP+  )
Airport Services,         )
                           )
      Defendant.     )
                           )

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant SP Plus' ("SP+" or "Defendant") Motion to Compel Arbitration ("Motion") (Dkt. 22). The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendant's Memorandum in Support (Dkt. 23); Plaintiff Nancy Bryce's ("Plaintiff") Opposition (Dkt. 35); and Defendant's Reply (Dkt. 38), the Court GRANTS Defendant's Motion to Compel Arbitration for the following reasons.

I. BACKGROUND

A. Factual Background

Plaintiff brings one count of age discrimination against her employer, SP+, asserting that she was discriminated against and terminated in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). Dkt. 1-1 at 4, 12.

Plaintiff, a 76-year-old woman, was employed at Dulles International Airport ("IAD") and Reagan National Airport ("DCA") as the Human Resources Manager[1] for parking services and shuttle operations for approximately ten years. *Id.* at 3. Plaintiff received only positive performance feedback in her time as the Human Resources Manager. *Id.*

On July 29, 2021, Defendant contracted with the Metropolitan Washington Airport Authority ("Airport Authority") to oversee public shuttle bus and parking operations at IAD and DCA. *Id.* at 4. The contract for the Airport Authority's shuttle operations and parking services had previously been held by ABM/Five Star Parking for several years. *Id.* This contractual change affected Plaintiff's employer-employee relationship.

Plaintiff was initially hired by Defendant to retain her position as Human Resources Manager. *Id.* at 9. Confirmation of her hiring was sent to her via email on August 30, 2021, with accompanying preemployment documentation that required completion. *Id.* Plaintiff completed the preemployment documentation that same day. Dkt. 35-1 at 50-62.[2] The preemployment

---

[1] Plaintiff initially served as the Human Resources Manager for shuttle operations and parking services at DCA from November 2011-August 2020. Dkt. 1-1 at 5. In August 2020, Plaintiff was promoted to the Regional Human Resources Manager for shuttle operations and parking services for both DCA and IAD. *Id.* at 5-6. The Court will refer, like the parties, to Plaintiff's position as "Human Resources Manager."

[2] Plaintiff submitted the "Full Time New Hire" packet that she completed on August 30, 2021 as an exhibit to her Opposition brief. Dkt. 35-1 at 50-62. The Full Time New Hire packet includes various documents, such as an "Emergency Contact Information Form" and a "New Hire

documentation included a document entitled "Mutual Agreement to Arbitrate All Claims" ("Arbitration Agreement" or "Agreement"), which was electronically signed by Plaintiff on August 30, 2021. Dkt. 35-1 at 52, 54.

> In relevant part, the terms of the Arbitration Agreement read as follows:
>
> SP+ and I agree to use binding arbitration as the means to resolve all disputes that may arise out of or relate to my application for employment or employment with SP+, including termination, except as stated otherwise herein . . . . The Parties also agree the scope of this Agreement includes all disputes, whether based on tort, contract, or statute. This includes any claims of discrimination, harassment and/or retaliation, whether they be based on Title VII of the Civil Rights Act of 1964, as amended, or any other state or federal law, such as the Fair Labor Standards Act, Fair Credit Reporting Act, Family Medical Leave Act, Older Workers Benefits Protection Act of 1990, or other federal, state, or local statutes, or regulations, or common law claims, addressing the same or similar subject matters . . . . [This agreement] also does not prevent me from filing and pursuing proceedings before the United States Equal Employment Opportunity Commission. However, if I pursue a claim following the exhaustion of such administrative remedies, that claim would be subject to this Agreement . . . . SP+ and I agree to give up our respective rights to trial by jury of any claim we may have against the other that may arise out of or relate to my application for employment with SP+, including termination.

Dkt. 35-1 at 52.

The electronic signature method used by Defendant included clicking a checkbox which would affix the user's electronic signature on the document. Dkt. 23 at 7. With respect to the Arbitration Agreement, the following text was located directly above the electronic signature checkbox: **"BY ACKNOWLEDGING RECEIPT OF THIS AGREEMENT, I AGREE AND ASSENT TO ITS TERMS. I UNDERSTAND THAT THIS AGREEMENT REQUIRES ME TO ARBITRATE ALL DISPUTES THAT ARISE OUT OF MY EMPLOYMENT. IT IS UNNECESSARY THAT SP+ OR I SIGN THIS AGREEMENT. IT IS BINDING."** Dkt. 35-1 at 54.

---

Information Form." The Full Time New Hire packet also includes the Arbitration Agreement at issue here. *Id.* at 52, 54.

Before Plaintiff actually began work on October 1, 2021, Defendant terminated Plaintiff's employment. Dkt. 1-1 at 9.

Defendant did not locate the Arbitration Agreement pertinent to Plaintiff until February 12, 2024, while in the process of answering one of Plaintiff's discovery requests. Dkt. 23 at 3. That same day, defense counsel contacted Plaintiff's counsel, communicating that the Arbitration Agreement had been found, as defense counsel was previously unaware of the agreement. Dkt. 23-1 at 8. Defense counsel inquired whether Plaintiff would be willing to stay proceedings before the Court in favor of arbitration, which Plaintiff declined. *Id.*

### B. Procedural Background

On May 20, 2022, Plaintiff filed charges of discrimination with both the Equal Employment Opportunity Commission ("EEOC") and the Virginia Office of Civil Rights ("OCR"), to which Defendant filed a position statement in opposition. Dkt. 35 at 2. Plaintiff received her Letter of her Right to Sue from the EEOC and OCR on June 1, 2023 and July 31, 2023, respectively. *Id.* Plaintiff filed her Complaint with the Circuit Court for Arlington County on July 31, 2023, alleging age discrimination under the ADEA and the Virginia Human Rights Act ("VHRA"). Dkt. 23 at 2. On August 30, 2023, Defendant removed the instant action to this Court and, on September 6, filed a Partial Motion to Dismiss Plaintiff's state law claims. *Id.* This Court granted Defendant's Partial Motion to Dismiss, without objection from Plaintiff, on October 12, 2023. Dkt. Nos. 4-5, 9, 11. The next day, Defendant filed its Answer to Plaintiff's remaining ADEA claim. On October 20, 2023, this Court entered a Scheduling Order, and discovery between the parties commenced, set to conclude on April 15, 2024. Dkt. 23 at 2. Then, on February 15, 2024, Defendant filed the Present Motion to Compel Arbitration. Dkt. 22. Plaintiff filed her Opposition on February 29, 2024, and Defendant filed its Reply on March 6, 2024.

4

## II. STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") stipulates that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The effect of [this] section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Likewise, the FAA was passed "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Rader v. Nw. Fed. Credit Union*, No. 1:23-cv-160, 2024 WL 388097, at *4 (E.D. Va. Feb. 1, 2024) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000)). Consequently, there is "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

## III. ANALYSIS

Defendant styles its motion to compel arbitration as both a motion to compel and, alternatively, as a motion to dismiss for improper venue.[3] The Court will first address the issue of whether it should compel arbitration.

---

[3] "[B]ecause a motion under 12(b)(3) is a disfavored 12(b) motion," the Fourth Circuit has held that "a defendant will have to raise the forum selection issue in [its] first responsive pleading, or waive the clause." *Sucampo Pharm., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 549 (4th Cir. 2006). However, courts within this Circuit have granted motions compelling arbitration where the moving party did not locate the governing arbitration agreement until the discovery phase. *See Pitt v. Wells Fargo Bank*, No. 3:21-cv-3428, 2022 WL 2068851, at *3, (D.S.C. Apr. 1, 2022) (granting defendant's motion to compel arbitration where defendant did not become aware of the arbitration agreement until discovery, after having filed a responsive pleading); *see also Coleman-Reed v. Ocwen Loan Servicing LLC*, Nos. 2:15-13687 (Lead action), 2:15-13708 (Consolidated), 2016 WL 6469329, at *6-8, (S.D. W. Va. Oct. 28, 2016) (granting defendant's motion to compel arbitration where defendant did not become aware of the arbitration agreement until discovery, after having filed a responsive pleading). While these cases, in part, analyze the parties' involvement through the lens of prejudice to the nonmoving party, the courts in these cases ultimately conclude that the defendants' participation in the litigation process was minimal, and thus did not constitute a default on arbitration rights.

A litigant can compel arbitration under the FAA by showing : (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of a party to arbitrate the dispute. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500-01 (4th Cir. 2002). Further, "a gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Courts should apply "ordinary state-law principles that govern the formation of contracts" when deciding whether an arbitration agreement exists between the parties. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Therefore, the threshold question a court must answer when seeking to compel arbitration is whether an arbitration agreement exists between the parties as a matter of the relevant state's contract law. *Rogers v. Tug Hill Operating, LLC*, 76 F.4th 279, 286-87 (4th Cir. 2023). If the Court determines that an arbitration agreement exists between the parties, then "it is the language of the contract that defines the scope of disputes subject to arbitration." *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

A party can default, or waive, its right to arbitration if it knew of the right to arbitrate and acted inconsistently with that right, namely through participation in litigation. *SZY Holdings, LLC v. Garcia*, No. 1:20-cv-01475-MSN-JFA, 2023 WL 2385607, at *5 (E.D. Va. Mar. 6, 2023) (citing *In re Mercury Const. Corp.*, 656 F.2d 933, 939 (4th Cir. 1981)). Whether a party has defaulted on its right to arbitration depends on the particular facts of each case. *Mercury Const.*, 656 F.2d at 940; *Am. Heart Disease Prevention Found., Inc. v. Hughey*, 106 F.3d 389 (4th Cir. 1997). The Fourth Circuit has predicated much of its analysis of whether a party has defaulted on its right to arbitration on a showing of prejudice. *See, e.g., Maxum Founds., Inc. v. Salus Corp.*, 779 F.2d

6

974, 981 (4th Cir. 1985) ("A litigant may waive its right to invoke the Federal Arbitration Act by so substantially utilizing the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay."). However, the Supreme Court has recently instructed that "prejudice is not a condition of finding that a party . . . waived its right to stay litigation or compel arbitration under the FAA." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 419 (2022).[4] Therefore, following *Morgan*, to waive its right to arbitration, a party must "(1) know of an existing right to arbitration; and (2) act inconsistently with that right." *Holloman v. Consumer Portfolio Servs., Inc.*, No. RDB-23-134, 2023 WL 4027036, at *9, (D. Md. June 15, 2023).

The Fourth Circuit has held, pursuant to 9 U.S.C. § 3, that "the FAA requires a district court, upon motion by any party, to stay judicial proceedings involving issues covered by written arbitration agreements." *Choice Hotels Intern., Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709 (4th Cir. 2001). Further, "[n]otwithstanding the terms of § 3, however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable." *Id.* at 709-10; *see also Murray v. United Food and Com. Workers Intern. Union*, 289 F.3d 297, 301 (4th Cir. 2002) ("When parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to stay judicial proceedings . . . and compel arbitration in accordance with the agreement's terms.").

Here, Plaintiff challenges the legitimacy of the Arbitration Agreement by contesting the existence of a binding and enforceable arbitration agreement between the parties. Dkt. 35 at 7.

---

[4] The Supreme Court, in *Morgan*, recognized that general waiver principles are not conditioned on prejudice and, instead, emphasized waiver as "the intentional relinquishment or abandonment of a known right." *Morgan*, 596 U.S. at 417. Thus, the Supreme Court instructed that there should not be "special, arbitration-preferring procedural rules" and that the lower courts should have focused on the party seeking to enforce the arbitration provision's conduct and whether that party "knowingly relinquish[ed] the right to arbitrate by acting inconsistently with that right." *Id.* at 418-19.

Plaintiff asserts that there are several defects with the Arbitration Agreement, including its late production and lack of signatures from both parties, that render the document effectively unenforceable.  Alternatively, Plaintiff argues that Defendant has defaulted or waived its right to arbitration by failing to raise the affirmative defense earlier, particularly in Defendant's responsive pleadings, and by participating in the litigation process.  The Court will analyze each of Plaintiff's claims in turn.

A. Whether the Binding Arbitration Clause Applies and Therefore Warrants Compelling Arbitration

Under Virginia law, "a written agreement to submit any existing controversy to arbitration . . . between the parties is valid, enforceable, and irrevocable, except upon such grounds as exist at law or equity for the revocation of any contract."  Va. Code Ann. § 8.01-581.01 (West 2024). Further, Virginia law requires offer, acceptance, and consideration for the formation of a contract. *Lester v. TMG, Inc.*, 896 F.Supp.2d 482, 485 (E.D. Va. 2012).

All three elements are present in this case.  Plaintiff applied to be hired by Defendant and was subsequently notified of her hiring by Defendant on August 30, 2021.  Dkt. 1-1 ¶¶ 55-57. Accompanying the congratulatory email was preemployment paperwork that needed to be completed before the hiring process was finalized.  Dkt. 1-1 ¶¶ 57-58.  The Arbitration Agreement was among these materials.  Dkt. 35-1 at 52-54.  Plaintiff both initialed the Arbitration Agreement and electronically signed the Agreement through Defendant's electronic signature mechanism. Dkt. 35-1 at 54.  Above the electronic signature checkbox, a statement, written in bold and capitalized, notified Plaintiff that by signing the Agreement, she would be agreeing and assenting to all of the terms contained therein.  *See* Dkt. Nos. 23 at 7; 35-1 at 54.  Plaintiff signed the document on August 30, 2021.  Dkt. 35-1 at 54.

8

The present claim likewise fits squarely within the language of the Arbitration Agreement. As the Supreme Court has noted, if an agreement to arbitrate exists between the parties, analysis of whether the relevant dispute is covered by the agreement is dependent on an analysis of the agreement's language. *Waffle House*, 534 U.S. at 289. Here, the Arbitration Agreement stipulates that the parties "agree to use binding arbitration as the means to resolve disputes that may arise out of or relate to [Plaintiff's] application for employment or employment with SP+, including termination . . . ." Dkt. 35-1 at 52. Further, the Agreement specifies that it covers "any claims of discrimination." *Id.* A plain reading of the Arbitration Agreement's language indicates that Plaintiff's age discrimination dispute falls within the scope of the Agreement. However, even if there are doubts regarding the scope of the Arbitration Agreement, the Fourth Circuit has held that "courts must resolve any doubts concerning the scope of arbitrable issues in favor of arbitration." *Great Am. Ins. Co. v. Hinkle Contr. Corp.*, 497 F. App'x 349, 352 (4th Cir. 2012); *see also United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). Given the plain language of the Agreement and the deferential standard towards arbitration, the Court finds that the present dispute is covered by the Arbitration Agreement.

Here, the Court finds that all of the elements of a binding agreement have been met. There was a clear offer for employment from Defendant, which Plaintiff accepted. Plaintiff's offer of employment was contingent on the completion of certain employment paperwork, which included an arbitration clause. The parties then exchanged sufficient consideration in the form of a mutual agreement to arbitrate any and all claims arising out of Plaintiff's hiring, evidenced by Plaintiff's

signature on the Arbitration Agreement. *See Johnson v. Circuit City Stores*, 148 F.3d 373, 378 (4th Cir. 1998) (holding that a mutual agreement to be bound by an arbitration agreement constitutes sufficient consideration (citing *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 274 (4th Cir. 1997))). Further, the relevant claim here fits squarely within the language of the Arbitration Agreement, as Plaintiff is bringing an action pursuant to her termination.

Despite this, Plaintiff challenges the second *Adkins* factor—namely, whether a written agreement between the parties exists which purports to cover the relevant dispute. Particularly, Plaintiff asserts, *inter alia*, that the Arbitration Agreement does not bind the parties because: (i) Plaintiff's electronic signature was not authenticated, (ii) Defendant did not sign the agreement, (iii) the agreement does not resemble the "Employment Application" relied on by Defendant before the EEOC, and (iv) Defendant did not produce the Arbitration Agreement earlier in the litigation process. The Court is unconvinced by Plaintiff's arguments and will address them in turn.

Plaintiff first claims that she does not remember signing an agreement to arbitrate and that she did not fill out Defendant's preemployment paperwork on August 30, 2021. Dkt. Nos. 31-1 ¶ 38; 1-1 ¶ 58. Various courts have recognized, however, that a party is bound to an agreement that they claim to have no recollection of signing but did in fact sign. *See Rader*, 2024 WL 388097, at *6 (holding that signed contracts are valid and enforceable even when the challenging party claims to not remember signing the agreement); *see also Gadberry v. Rental Servs. Corp.*, No. 0:09-3327-CMC-PJG, 2011 WL 766991, at *2 (D.S.C. Feb. 24, 2011) (holding that a signature was valid and enforceable where plaintiff submitted an affidavit stating that he "does not remember signing the contract, having the contract explained to him, or receiving copies of any of the materials mentioned in the contract"); *Boomer v. AT & T Corp.*, 309 F.3d 404, 415 n.5 (7th Cir. 2002) (rejecting Plaintiff's argument that him not remembering receiving a customer agreement is

10

sufficient to grant a motion to compel arbitration); *Ineman v. Kohl's Corp.*, No. 14-cv-398, 2015 WL 1399052, at *4 (W.D. Wis. Mar. 26, 2015) (noting that "[b]ecause continued use of a credit card by the cardholder constitutes acceptance of the terms of the credit card agreement, courts routinely reject the essential argument made by plaintiff here—namely, that the agreement is unenforceable because she did not sign, read or receive the credit card agreement, or at least she does not remember doing so"). Further, Plaintiff offers no countervailing authority to support her contention that the Arbitration Agreement is unenforceable because she does not remember signing it. Accordingly, this argument fails.

Plaintiff next suggests that Defendant's Senior Business Development and Operations Manager, Christina Combs, affixed Plaintiff's electronic signature on the Arbitration Agreement. Dkt. 35 at 6. This argument fares no better. Plaintiff's theory, based solely on conjecture and her lack of memory, is that, because Ms. Combs testified that she had to roll Plaintiff's application forward and because she cannot process all the applications simultaneously, Ms. Combs must have actually signed the Arbitration Agreement on Plaintiff's behalf when she processed Plaintiff's application. Dkt. 35 at 6. But Plaintiff offers nothing to support this argument beyond her own conjecture. Defendant, however, has produced an affidavit that specifically avers that Defendant's "business records . . . reflect that Ms. Bryce filled out online preemployment documents, including . . . the Mutual Agreement to Arbitrate All Claims on August 30, 2021." Dkt. 38-1 ¶ 10. Further, the affidavit confirms that, for the governing Arbitration Agreement, Plaintiff would have both inserted her initials and affixed her electronic signature using the checkbox feature in order to acknowledge receipt of the Arbitration Agreement. *Id.* ¶ 11-12. The affidavit also notes that, on August 30, 2021, Plaintiff completed the necessary hiring steps, including acknowledgment of the Arbitration Agreement, and that Plaintiff was subsequently "rolled to hire" *after* Plaintiff had

signed the preemployment paperwork.   *Id.* ¶ 12.   Defendant's affidavit clearly contradicts Plaintiff's unfounded theory that Defendant affixed Plaintiff's electronic signature on the Arbitration Agreement.

Further attempting to avoid her obligation to arbitrate, Plaintiff contends that her signature is invalid because it is not handwritten.   This argument is without merit.   Under Virginia law, electronic signatures are legally sufficient.   Va. Code ann. § 59.1-487(a) ("An . . . electronic signature is attributable to a person if it was the act of the person. The act of the person may be shown [by] a showing of the efficacy of any security procedure applied to determine the person to which the . . . electronic signature [belonged]."). Notably, Plaintiff contests neither the presence of her initials on the Arbitration Agreement nor her electronic signature on the other preemployment documents, which were also signed on August 30, 2021 using the same electronic signature mechanism as the Arbitration Agreement.[5]

Furthermore, Plaintiff's assertion that the Arbitration Agreement is not binding because it is not signed by Defendant is also unavailing.   Plaintiff fails to cite any authority supporting her contention, and the Fourth Circuit has held that "[w]ell-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision." *Washington Square Securities, Inc. v. Aune*, 385 F.3d 432, 435 (4th Cir. 2004); *see also O'Neil v. Hilton Head Hosp.*, 115 F.3d 272, 274-75 (4th Cir. 1997) (rejecting employee's argument that

---

[5] Moreover, federal courts have consistently upheld the enforceability of so-called "clickwrap" agreements which require parties to manifest their assent to certain contracts or terms and conditions by checking a box or clicking a button on a website. *See Am. Eagle Motors, LLC v. Copart of Connecticut, Inc.*, 2023 WL 123503, at *3 (E.D.Va. Jan. 5, 2023) (Alston, J.) (upholding the enforceability of a forum selection clause contained within a clickwrap agreement); *see also Hosseini v. Upstart Network, Inc.*, 2020 WL 573126, at * (E.D. Va. Feb. 5, 2020) (upholding the enforceability of an arbitration clause contained within a hybrid clickwrap agreement).

employer did not agree to be bound by arbitration agreement when the employer asked the employee to submit to binding arbitration).[6] Likewise, other Circuits have also held that arbitration agreements need not be signed in order to be enforceable. *See Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) (holding that "the plain language of § 2 requires that the arbitration provision be 'written.' It does not, however, require that the agreement to arbitrate be signed by either party"); *see also Tinder v. Pinkerton Sec.*, 305 F.3d 728, 736 (7th Cir. 2002) (noting that the FAA does not require arbitration agreements to be signed); *Med. Dev. Corp. v. Indus. Molding Corp.*, 479 F.2d 345, 348 (10th Cir. 1973) ("Decisions under the Federal Arbitration Act . . . have held it not necessary that there be a simple integrated writing or that a party sign the writing containing the arbitration clause. All that is required is that the arbitration provision be in writing."). Additionally, the Agreement itself stipulated that "it is unnecessary that SP+ or I sign this Agreement" and that the arbitration provision "is binding." Dkt. 35-1 at 54. Plaintiff acknowledged this disclaimer by initialing directly above and electronically signing directly below the above-quoted provision. *Id.* Therefore, given the weight of the countervailing authority and the plain language of the governing Arbitration Agreement, Plaintiff's assertion that the Agreement is unenforceable because it is not signed by Defendant fails.

Plaintiff additionally asserts that she is not bound by the governing Arbitration Agreement because the Agreement bears no resemblance to the "Employment Application" that Defendant relied on before the EEOC. Dkt. 35 at 7. However, this argument ignores the plain language of the Arbitration Agreement. The Agreement, in relevant part, stipulates that "[i]t does not prevent

---

[6] *See In re Titanium Dioxide Antitrust Litig.*, 962 F.Supp.840, 854 (D. Md. 2013) ("[T]here is no requirement that arbitration agreements must be signed to be enforceable."); *Krusch v. TAMKO Bldg. Prods., Inc.*, 34 F.Supp.3d 584, 589 (M.D.N.C. 2014) ("Arbitration agreements must be in writing, 9 U.S.C. § 2, but they need not be signed to be enforceable.").

[Plaintiff] from filing and pursuing proceedings before the United States Equal Employment Opportunity Commission," but should Plaintiff "pursue a claim following the exhaustion of such administrative remedies, that claim would be subject to this Agreement." Dkt. 35-1 at 52. Here, the plain language of the Agreement makes clear that Plaintiff's claim before the EEOC was outside of the scope of the Arbitration Agreement and therefore was not utilized in that proceeding. The Agreement therefore plainly permits the pursuit of a claim before the EEOC *and* covers subsequent claims brought by Plaintiff after exhausting administrative remedies beyond the scope of the Agreement. *See Campbell v. Comcast Cable Commc'ns Mgmt., LLC*, No. CV CCB-21-2000, 2022 WL 4237109, at *6 (D. Md. Sept. 13, 2022) ("With respect to [plaintiff's] contention that [defendant's] failure to invoke arbitration during the administrative process waived its ability to require arbitration, courts have found that participation in administrative proceedings before the EEOC, by the party seeking arbitration, is not considered litigation for the purposes of determining waiver."). As such, the use of the Arbitration Agreement to compel arbitration at this juncture comports with the Agreement's plain language.

Moreover, the Supreme Court has noted that a private agreement to arbitrate between an employee and an employer does not prevent the EEOC from pursuing victim-specific judicial relief. *Waffle House*, 534 U.S. at 298. To be sure, it is well-established that district court proceedings constitute *de novo* review of a plaintiff's claims and that district courts are not bound by what happens before the EEOC. *See Chandler v. Roudebush*, 425 U.S. 840, 846 (1976) (recognizing that private employees are "entitled to a *trial de novo* on their employment discrimination claims"); *Laber v. Harvey*, 438 F.3d 404, 420 (4th Cir. 2006) (recognizing that the corollary of *Chandler* is that employees are "unable to use the EEOC's findings to compel a finding of discrimination in the district court"). Accordingly, due to the plain language of the Arbitration

Agreement and relevant Supreme Court precedent, Defendant's failure to raise arbitration in response to Plaintiff's EEOC claim is inconsequential because doing so would have been inappropriate.

Finally, the remaining *Adkins* factors are easily satisfied. There is a clear dispute. Plaintiff has recognized that Defendant is engaged in interstate commerce. Dkt. 1-1 ¶¶ 12-15. Further, Plaintiff refused to stay court proceedings after defense counsel informed her of the Arbitration Agreement and Defendant's intention to arbitrate. Dkt. 23-1 at 8. Therefore, the Court finds all of the *Adkins* factors sufficiently satisfied.

### B. Whether Defendant Has Defaulted or Waived Its Right to Arbitration

Following the Supreme Court's holding in *Morgan*, the analysis regarding whether a party has waived or defaulted on their right to arbitration is twofold: (1) a defaulting party must have knowledge of the right to arbitrate and (2) that party must act inconsistently with that right. *Holloman*, 2023 WL 4027036, at *9.[7] Here, Plaintiff has failed to show that both waiver prongs are satisfied. Plaintiff asserts that Defendant has waived its right to arbitration because: (i) Defendant removed the case to this Court instead of raising arbitration at the state court level; (ii) Defendant did not raise arbitration in its responsive pleadings as required by the Federal Rules of Civil Procedure; and (iii) Defendant's participation in litigation contradicts its intentions to arbitrate. Plaintiff's assertions will be taken in turn.

---

[7] Although not made explicit in the *Holloman* decision, the district court there implied that the burden was on the plaintiff seeking to avoid arbitration to establish waiver of that contractual right. *See* 2023 WL 4027036, at *8 ("Plaintiff has not shown that Defendants Waived Right to Arbitrate."). This is consistent with general waiver principles which requires that "the burden is on the party asserting waiver to prove that the other party knew of the right and intended to relinquish that right by clear, precise, and unequivocal evidence." *Noell Crane Sys. GmbH v. Noell Crane & Serv., Inc.*, 677 F.Supp.2d 852, 862 (E.D. Va. 2009) (citing *Stanley's Cafeteria v. Abramson*, 226 Va. 68, 74 (1983)).

Plaintiff contends that Defendant's removal to this Court, instead of raising the issue of arbitration in state court, constituted a "definitive waiver of any right to compel arbitration that SP Plus had." Dkt. 35 at 9. Plaintiff, however, fails to provide any authority supporting this claim. In fact, two district courts within this Circuit have found that removal to federal court was *not* inconsistent with an intent to pursue arbitration. *Coleman-Reed*, 2016 WL 6469329, at *6-8 (holding that Plaintiff did not meet "the 'heavy burden' of showing that [defendant] defaulted on its right to arbitration" where defendant removed the action to federal court, filed responsive pleadings, and participated in discovery); *Hall v. UBS Fin. Servs., Inc.*, No. 6:19-cv-3316-TMC, 2022 WL 20765343, at *4 (D.S.C. Oct. 25, 2022) (rejecting the argument "that Defendants waived their right to compel arbitration simply by removing this action to federal court"). This Court agrees with the *Coleman* and *Hall* courts that the removal of proceedings to federal court does not constitute a knowing waiver of arbitration.

Further, Plaintiff asserts that Defendant waived its right to arbitrate by failing to raise the defense of arbitration in its Answer. Plaintiff points to Federal Rules of Civil Procedure 8(c) and 12(b) to support the proposition that Defendant was required to raise its intent to arbitrate in its responsive pleadings or waive the defense entirely. *See* Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . arbitration and award."); *see also* Fed. R. Civ. P. 12(b) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required."). However, the Fourth Circuit has held that a party's filing of a "responsive pleading, such as an answer or compulsory counter-claim, are not necessarily inconsistent with an intent to pursue arbitration." *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 206 (4th Cir. 2004); *see also C.B. Fleet Co., Inc. v. Aspen Ins. UK Ltd.*, 743 F.Supp.2d 575, 588 (W.D. Va. 2010) ("[T]he filing

16

of such a responsive pleading does not necessarily amount to implicit waiver of one's right to arbitrate."). Accordingly, Plaintiff's assertion that Defendant defaulted on its right to arbitration by failing to raise arbitration in its responsive pleadings is unavailing.

Plaintiff's final contention is that Defendant's participation in litigation and discovery up until the date that the Motion to Compel Arbitration was filed constitutes default of Defendant's right to arbitrate. However, this contention fails to consider the knowledge and intentionality requirements in the *Morgan* waiver analysis.[8] In this case, Defendant was unable to seek arbitration without locating the Arbitration Agreement and confirming that Plaintiff had indeed signed the employment paperwork containing the arbitration clause. Upon discovery of the Arbitration Agreement on February 12, 2024, which occurred no more than five months after Defendant removed the instant case to this Court, Defendant contacted Plaintiff seeking to arbitrate that same day. Dkt 23-1 at 8. After Plaintiff informed Defendant that she did not wish to stay the court proceedings in favor of arbitration, Defendant promptly filed its Motion to Compel Arbitration on February 15, 2024, only three days after locating the Agreement. Dkt. Nos. 23-1 at 8; 22. Therefore, that Defendant participated in the litigation before locating the Arbitration Agreement does not foreclose Defendant's right to arbitration.

District courts within this Circuit have likewise granted motions to compel arbitration where the arbitration agreement was not found until the discovery phase and where the defendant had already filed responsive pleadings. *Pitt v. Wells Fargo Bank*, No. 3:21-cv-3428-JFA-TER,

---

[8] The Fourth Circuit has recognized a form of constructive knowledge. *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 205 (4th Cir. 2004). In *Patten Grading*, Skanska, like the present Defendant, was not made aware of the arbitration agreement until discovery unfolded. *Id.* Therefore, for the purposes of waiver, the Fourth Circuit did not charge Skanska with knowledge of the right to arbitrate for the full eight months between the filing of the complaint and Skanska filing its motion to compel arbitration.

17

2022 WL 2068851, at *3 (D.S.C. Apr. 1, 2022); *Coleman-Reed*, 2016 WL 6469329, at *6-8. Although the court employed a pre-*Morgan* prejudice analysis, the *Pitt* Court found that the Defendant's participation in the litigation process from October 2021 to February 2022 was insufficient to constitute a waiver of Defendant's right to arbitration. *Pitt*, 2022 WL 2068851, at *3. Even excluding that court's discussion of prejudice, the analysis still proves persuasive here, because the *Pitt* Court's reasoning supports the principle that Defendant in this case failed to act so inconsistently with its known right to arbitration by participating in the litigation process before acquiring the Arbitration Agreement. *Id.* Upon locating the Agreement, Defendant promptly sought to exercise its right to arbitration and filed a timely motion with this Court. Plaintiff has therefore failed to establish a knowing and intentional waiver of Defendant's right to arbitration. Accordingly, the Court finds that Defendant has not waived or defaulted on its right to arbitrate the present dispute.

Because the Court finds that the parties are bound by an enforceable arbitration agreement, that Defendant did not waive its right to arbitration, and that Defendant has satisfied the *Adkins* factors to compel arbitration, the Court will grant Defendant's Motion to Compel Arbitration. Because Plaintiff agreed to the arbitration clause and because all of Plaintiff's claims are within the scope of the arbitration clause, this case will also be dismissed in favor of arbitration. *See Choice Hotels Int'l*, 252 F.3d at 709-10 ("Notwithstanding the terms of § 3 [of the FAA], however, dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable.").[9]

## IV. CONCLUSION

---

[9] Because the Court has found that Plaintiff's claim is subject to arbitration and that dismissal is appropriate under the *Choice Hotels* framework, the Court need not reach the parties' Rule 12(b)(3) arguments. Moreover, all of the currently pending discovery motions will be denied as moot in light of the Court's decision regarding arbitration.

In sum, Plaintiff's claim is subject to arbitration under the Arbitration Agreement electronically signed by Plaintiff in August 2021. Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendant's Motion to Compel Arbitration (Dkt. 22) is GRANTED; and it is

FURTHER ORDERED that the Complaint (Dkt. 1-1) is DISMISSED WITHOUT PREJUDICE; and it is

FURTHER ORDERED that Plaintiff's Objections to the Magistrate Judge's Ruling (Dkt. 45) are DENIED as MOOT; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to administratively close this action and place it among the ended causes.

It is SO ORDERED.

Alexandria, Virginia
July 18, 2024

_____ /s/
Rossie D. Alston, Jr.
United States District Judge